**STATE of Minnesota, Respondent,**

v.

**Eddie DAVIS, Appellant.**

**No. 50813.**

Supreme Court of Minnesota.

Jan. 16, 1981.

---

C. Paul Jones, Public Defender, and Kathleen K. Rauenhorst, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Division, Asst. County Atty., Thomas A. Weist and Anne E. Peek, Minneapolis, for respondent.

SHERAN, Chief Justice.

Defendant was found guilty by a district court jury of charges of burglary, aggravated robbery, aggravated assault, and criminal sexual conduct in the first degree. Minn.Stat. §§ 609.05, .225, subd. 2, .245, .342(e)(i), (f)(i), .58, subd. 2(1)(b) (1978). The trial court, acting pursuant to Minn. Stat. §§ 609.035, .11, .585 (1978), sentenced defendant to prison terms of 1 year and 1 day to 20 years for the burglary and 1 year and 1 day to 15 years for the robbery; the court made the first term consecutive to a prior term and the second term consecutive to the first. Issues raised by defendant on this appeal from judgment of conviction are (1) whether the trial court erred in admitting eyewitness identification testimony, which defendant contends was the suppres-

sible product of unnecessarily suggestive identification procedures employed by the police, (2) whether the trial court erred in admitting testimony concerning extrajudicial admissions of a separately-tried codefendant under R. 801(d)(2)(E), Minn.R. Evid., which defines as nonhearsay statements made by a coconspirator of a party during the course and in furtherance of the conspiracy, and (3) whether the evidence on the issue of identification was legally insufficient. We affirm.

This prosecution stems from an incident occurring on the evening of May 9, 1979, when 6 men broke into the house of a young married couple and committed numerous terroristic and assaultive acts against them before leaving when one of them sighted a police car driving through the neighborhood. Police investigation focused suspicion on defendant and 5 other men, 4 of whom were arrested along with defendant. Both witnesses—the husband positively, the wife less than positively—identified defendant at trial as the intruder who wore a stocking cap, had an earring in his left ear, and was armed with a small handgun. Other evidence connecting defendant to the crime included: (a) the evidence that defendant had a pierced left ear, (b) the evidence that the husband had also positively identified defendant's brother at a lineup as one of the participants, (c) the evidence that one of the suspects was named Fred White, that he was an acquaintance of defendant, and that the wife had heard one of the intruders say what she thought was "That's enough Red" but which could have been "That's enough Fred" and, finally (d) the testimony of Fred White's former girl friend. This woman's testimony revealed that shortly after the incident 2 of the 6 suspects appeared at her apartment and used the telephone to try to locate the other 4, including defendant, who they said had participated with them in the incident. Eventually all 6 of these suspects, including defendant, who was wearing a stocking cap, arrived at the apartment, after which this woman and another woman accompanied one of the suspects to the neighborhood of the burgled house, where they retrieved the stranded car which the 6 had used to get to the scene of the crime. The woman testified that she saw two guitars in the car, and the prosecutor was able to establish that two guitars had been taken in the incident.

■ 1. Defendant's first contention is that the trial court erred in admitting the eyewitness identification testimony because the testimony was the tainted suppressible product of unnecessarily suggestive identification procedures. While we agree that the police lieutenant who conducted the investigation did two things which could have tainted the identification, our analysis of all of these circumstances present in this case convinces us—as it did the trial court—that there was no "very substantial likelihood of irreparable misidentification" and that therefore the identification testimony was reliable and admissible. *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

2. Defendant next contends that the trial court abused its discretion in admitting the testimony concerning the statements of the separately-tried codefendants concerning what was done and who did it. The applicable rule is Rule 801(d)(2)(E), Minn.R. Evid., which provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is "not hearsay."

We have no difficulty in concluding that there was sufficient independent evidence of a conspiracy and of defendant's participation in it, and we are satisfied that if the statements in question were made "during the course" of the conspiracy they were "in furtherance of" the conspiracy. The difficult issue—recognized as such by the trial court—is whether the statements may be said to have been made "during the course" of the conspiracy.

■ In applying the rule, we cannot imply an agreement to conceal in each case and permit admission of all statements made during such a concealment phase

which are in furtherance of the conspiracy. *Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *United States v. Smith,* 520 F.2d 1245 (8th Cir. 1975). The proper approach is to analyze the facts of the case to determine if in fact there was an agreement to conceal, to determine the closeness in time of the concealment to the commission of the principal crime, and to determine the reliability of these statements. *United States v. Mackey,* 571 F.2d 376 (7th Cir. 1978); C. McCormick, *Handbook of the Law of Evidence,* § 267, at 646 (2d ed. E. Cleary 1972).

▇ In this case the evidence shows that there was a discussion concerning the necessity of retrieving the car. The statements were not the kind of unreliable statements which were made by one conspirator to police in hope of obtaining leniency. Rather, the statements were made immediately after the incident to a trusted confident whose help was being solicited to aid in retrieving the car. By the time several of the people left to retrieve the car it is clear that all 6 of the coconspirators had consented—implicitly or otherwise—to the decision to get the car. Thus, there was an agreement of sorts.

In short, the determining factors here are (a) the fact that the statements were made just moments after the incident, (b) the fact that there was some sort of agreement made at the apartment that it was necessary to retrieve the car that night so that the police did not locate it and connect it to the crime and the crime to the 6 men, and (c) the fact that the statements bore strong indicia of reliability. We conclude, therefore, that the trial court did not abuse its discretion in admitting the evidence. We also note that even if admission of the evidence were deemed to be erroneous, the error could not have been prejudicial, since in any event the other testimony of the woman, which was highly incriminating, was clearly admissible. There is no merit to defendant's contention that his right of confrontation was violated.

3. Defendant's final contention, that the evidence of his guilt was legally insufficient, is without merit.

Affirmed.

AMDAHL, J., took no part in the consideration or decision of this case.